IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE: SYNGENTA AG MIR 162 ) <br> CORN LITIGATION ) <br> ) <br> This Document Relates To: ) <br> ) <br> *Louis Dreyfus Company Grains* ) <br> *Merchandising LLC v. Syngenta AG, et al.*, ) <br> No. 16-2788-JWL ) <br> _____) | MDL No. 2591 <br><br> Case No. 14-md-2591-JWL |

**MEMORANDUM AND ORDER**

This single case within this MDL presently comes before the Court on the motion (Doc. # 93 in Case No. 16-2788) filed by defendants Syngenta AG; Syngenta Crop Protection AG; Syngenta Corporation; Syngenta Crop Protection, LLC; and Syngenta Seeds, LLC (collectively "Syngenta") for judgment on the pleadings with respect to the remaining claims asserted by plaintiff Louis Dreyfus Company Grains Merchandising LLC ("LDC"). For the reasons set forth below, the Court cannot conclude as a matter of law that LDC's remaining claims are time-barred, and therefore the Court **denies** the motion.

**I.     Background**

This MDL includes hundreds of similar suits filed against Syngenta by corn farmers and others in the corn industry. The suits generally relate to Syngenta's commercialization of genetically-modified corn seed products, Viptera and Duracade, which contained the trait MIR 162, without approval of that trait by China, an export market. The plaintiffs

have alleged that Syngenta's commercialization of its products caused the genetically-modified corn to be commingled throughout the corn supply in the United States; that China rejected imports of all corn from the United States because of the presence of MIR 162; that such rejection caused corn prices to drop in the United States; and that corn farmers and others in the industry were harmed by that market effect. The Court certified state-wide classes for tort claims by producers under the law of eight different states.[1]

The particular case within the MDL to which this order relates was brought by plaintiff LDC in the District of Minnesota. LDC alleges that it operates grain elevators and that it buys, sells, and exports corn.[2] By its first amended complaint, LDC asserted claims against Syngenta under the federal Lanham Act and state-law claims for negligence, fraudulent misrepresentation, and tortious interference with business expectations. By Memorandum and Order of January 19, 2018, the Court dismissed plaintiff's Lanham Act and fraud claims, as well as the negligence claim to the extent based on certain theories. *See In re Syngenta AG MIR 162 Corn Litig.*, 2018 WL 489098 (D. Kan. Jan. 19, 2018) (Lungstrum, J.). Syngenta now seeks judgment on the remaining negligence and tortious interference claims.

---

[1] The Court also certified a nationwide Lanham Act class of producers, but it subsequently granted summary judgment in favor of Syngenta on the claims under that statute.

[2] More precisely, LDC alleges that it sold corn to an affiliate that exported corn from the United States, but that the affiliate has assigned its claims against Syngenta to LDC. Thus, for convenience, the Court has referred to LDC in this MDL generally as an elevator operator and an exporter.

## II. Governing Standard

A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is analyzed under the same standard that applies to a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). *See Park Univ. Enterprises, Inc. v. American Cas. Co.*, 442 F.3d 1239, 1244 (10th Cir. 2006). The Court will dismiss a cause of action for failure to state a claim only when the factual allegations fail to "state a claim to relief that is plausible on its face," *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), or when an issue of law is dispositive, *see Neitzke v. Williams*, 490 U.S. 319, 326 (1989). The complaint need not contain detailed factual allegations, but a plaintiff's obligation to provide the grounds of entitlement to relief requires more than labels and conclusions; a formulaic recitation of the elements of a cause of action will not do. *See Bell Atlantic*, 550 U.S. at 555. The Court must accept the facts alleged in the complaint as true, even if doubtful in fact, *see id.*, and view all reasonable inferences from those facts in favor of the plaintiff, *see Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006). Viewed as such, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *See Bell Atlantic*, 550 U.S. at 555. The issue in resolving a motion such as this is "not whether [the] plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

### III. **Analysis**

#### A. *Applicable Limitations Period*

As the Court has previously noted in this case, in this MDL the Court applies the choice of law rules of the state in which the particular action was originally filed, in this case Minnesota. *See In re: Syngenta AG MIR 162 Corn Litig.*, 2018 WL 489098, at *3 (D. Kan. Jan. 19, 2018) (Lungstrum, J.) (citing *Johnson v. Continental Airlines Corp.*, 964 F.2d 1059, 1063 n.5 (10th Cir. 1992)). Minnesota statutes provide that if a claim is substantively based on the law of another state, that state's limitation period and tolling rules apply to the claim. *See* Minn. Stat. § 541.31, subd. 1(a)(1); *id.* § 541.32; *see also Whitney v. Guys, Inc.*, 700 F.3d 1118, 1123 n.6 (8th Cir. 2012). The Court has already ruled that LDC's common-law tort claims are governed by Connecticut law. *See In re: Syngenta*, 2018 WL 489098, at *3-4. Accordingly, LDC's remaining negligence and tortious interference claims are subject to Connecticut's limitations periods and tolling rules. LDC does not dispute that Connecticut law governs the timeliness of its claims.

Syngenta argues that LDC's negligence claim is barred by Conn. Gen. Stat. § 52-584, which provides a two-year statute of limitations for certain negligence actions. As LDC points out, however, that statute applies on its face only to negligence actions to recover damages for injury to person or personal property, while the present action involves only alleged economic injuries. *See id.*; *Tanasi v. CitiMortgage, Inc.*, 257 F. Supp. 3d 232, 277 (D. Conn. 2017) (negligence claims for physical injuries must be brought within two years under Section 52-584, while negligence claims for economic damages are subject to the three-year period in Section 52-577). In its reply brief, Syngenta has not disputed that

4

Section 52-584 cannot apply to LDC's claims of economic injuries. Accordingly, the Court will not apply Section 52-584's two-year limitations period in this case.

The parties agree that LDC's claims are subject to the three-year statute of repose imposed by Conn. Gen. Stat. § 52-577. *See Tanasi*, 257 F. Supp. 3d at 277; *Travelers Indem. Co. v. Rubin*, 551 A.2d 1220, 1223 (Conn. 1988) (Section 52-577 applies to all tort actions that do not fall within Section 52-584 or some other statute of limitation); *PMG Land Assocs., L.P. v. Harbour Landing Condominium Ass'n, Inc.*, 42 A.3d 508, 512 (Conn. Ct. App. 2012) (applying Section 52-577 to a tortious interference claim). Section 52-577 provides as follows: "No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of." *See* Conn. Gen. Stat. § 52-577. This is an occurrence statute---the three-year period runs not when the plaintiff discovers its injury, but rather on the date the defendant's conduct occurs. *See Watts v. Chittenden*, 22 A.3d 1214, 1219 (Conn. 2011). LDC filed this action against Syngenta on October 21, 2016. Therefore, in the absence of any tolling of this statute, LDC's claims are time-barred to the extent based on conduct by Syngenta occurring prior to October 21, 2013.

Syngenta argues that LDC's claims are barred because they are based on Syngenta's allegedly negligent commercialization of Viptera, which would have taken place in 2010 and early 2011 when that product was first launched in anticipation of the 2011 planting and growing season. In response, LDC argues that it is entitled to *American Pipe* tolling. LDC further argues that it has alleged wrongful conduct occurring after October 2013 and that its claims are made timely by Connecticut's continuing course of conduct doctrine. The Court addresses those two assertions of tolling in turn.

5

B.  American Pipe *Tolling*

In *American Pipe and Construction Co. v. Utah*, 414 U.S. 538 (1974), the United States Supreme Court recognized the following tolling rule under federal law: "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class." *See id.* at 554. LDC argues that if *American Pipe* tolling were applied in this case, the running of the three-year limitations period would have been suspended from September 12, 2014, to September 19, 2016, when LDC was a member of an asserted class in a case brought by Trans Coastal, and LDC would then be able to assert claims based on conduct as far back as October 16, 2011, without running afoul of Section 52-577. Syngenta argues in response that Section 52-577, a statute of repose, should not be subject to *American Pipe* tolling. The Court agrees with Syngenta that Connecticut law does not authorize the use of *American Pipe* tolling as an exception to Section 52-577's clear prohibition against actions filed more than three years after the allegedly wrongful conduct.

Last year, in *California Public Employees' Retirement System v. ANZ Securities, Inc.*, 137 S. Ct. 2042 (2017), the Supreme Court held that the federal Securities Act's three-year statute of repose was not subject to *American Pipe* tolling. *See id.* The Court noted that the time bar in that case was a true statute of repose, in that it provided a complete defense to any suit after a particular period of time, which would preclude tolling unless "there is a particular indication that the legislature did not intend the statute to provide complete repose but instead anticipated the extension of the statutory period under certain

6

circumstances." *See id.* at 2050. Thus, the Supreme Court effectively limited *American Pipe* tolling to periods of limitations other than true statutes of repose.

In *Grimes v. Housing Authority of the City of New Haven*, 698 A.2d 302 (Conn. 1997), the Connecticut Supreme Court adopted *American Pipe*'s rule for tolling statutes of limitation. *See id.* at 307. *Grimes*, however, did not involve the application of Section 52-577 or some other statute of repose, but instead involved Section 52-584's two-year limitations period that incorporates a discovery rule. *See id.* at 305 (trial court dismissed based on Section 52-584's two-year period). No appellate court in Connecticut has applied *American Pipe* tolling to Section 52-577 or any other statute of repose. Moreover, in applying the *American Pipe* rule in *Grimes*, the Connecticut Supreme Court also applied the U.S. Supreme Court's extension of *American Pipe* (which involved a class member seeking to intervene) to asserted class members who file individual actions. *See id.* at 306 n.8 (citing *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345 (1983)). The *Grimes* court also chose to follow Second Circuit law interpreting the *American Pipe* rule not to require claims identical to the previously-asserted class action claims. *See id.* at 307-10 (following *Cullen v. Margiotta*, 811 F.2d 698 (2d Cir. 1987)). This commitment by the Connecticut Supreme Court to follow federal law in adopting the *American Pipe* rule for purposes of state law suggests that the court would also adopt the U.S. Supreme Court's limitation of its own *American Pipe* rule to limitations periods other than true statutes of repose.

Section 52-577 states unequivocally that no tort action shall be brought more than three years from the date of the act or omission complained of, *see* Conn. Gen. Stat. § 52-577, and it is therefore a true statute of repose, akin to the Securities Act provision at issue

7

in *ANZ*. *See Barrett v. Montesano*, 849 A.2d 839, 845 (Conn. 2004) (although Section 52-577 is sometimes called a statute of limitation, it technically functions as a statute of repose). In the absence of authority from Connecticut's appellate courts, this Court must apply the statute as clearly written, prohibiting tort claims brought more than three years after the occurrence without provision for any possible tolling.

LDC notes that Connecticut's courts have applied other tolling rules to Section 52-577's three-year repose period, but those tolling rules are distinguishable. First, as more fully discussed below, The Connecticut Supreme Court has applied the continuing course of conduct doctrine to toll the running of Section 52-577's three-year period. *See, e.g.*, *Flannery v. Singer Asset Fin. Co., LLC*, 94 A.3d 553, 569-76 (Conn. 2014). That rule of tolling, however, does not really result in a suspension of the limitations period while running; more accurately described, it determines the date on which the three-year period begins to run in the case of ongoing conduct that occurs over a period of time. *See Carter v. University of Conn.*, 2006 WL 2130730, at *3 (D. Conn. July 28, 2006) (making this distinction in rejecting an argument for equitable tolling of Section 52-577), *aff'd on other grounds*, 264 F. App'x 111 (2d Cir. 2008).

Second, the Connecticut Supreme Court has applied tolling based on fraudulent concealment to a statute of repose. *See Connell v. Colwell*, 571 A.2d 116, 118 (Conn. 1990). Connecticut's fraudulent concealment rule is imposed by statute, however. *See* Conn. Gen. Stat. § 52-595. Thus, in *Connell*, in rejecting the argument that fraudulent concealment tolling should not apply to a statute of repose, the supreme court could cite evidence that the Connecticut Legislature intended that the fraudulent concealment rule

8

apply across the board. *See Connell*, 571 A.3d at 118 n.4. There is no similar statutory pronouncement from the Connecticut Legislature evincing an intent to make Section 52-577 (or any other statute of repose) subject to *American Pipe* tolling.

Finally, *American Pipe* is a form of equitable tolling, *see ANZ*, 137 S. Ct. at 2052, and as multiple courts have noted, Section 52-577's statute of repose has never been held to be subject to equitable tolling. *See Gerena v. Korb*, 617 F.3d 197, 206 (2d Cir. 2010) ("[T]he possibility that equitable tolling might apply here is foreclosed by Connecticut precedent, which establishes Conn. Gen. Stat. § 52-577 as a statute of repose not susceptible to equitable tolling."); *Carter*, 2006 WL 2130730, at *3-4 (rejecting argument for tolling of Section 52-577); *Essex Ins. Co. v. William Kramer & Assocs., Inc.*, 2016 WL 3198190, at *18 (D. Conn. June 8, 2016) (same).

Section 52-577 sets an absolute three-year bar on tort claims, and there is no evidence that the Connecticut Legislature did not mean what it stated in that statute. Moreover, LDC has not identified any Connecticut court that has extended *American Pipe* beyond the U.S. Supreme Court's own limitation to toll the statute's three-year period. In the absence of authority from Connecticut, this Court will not create such an exception to the plain language of Section 52-577. Accordingly, the Court rejects LDC's argument for application of *American Pipe* tolling in this case.

### C. *Continuing Course of Conduct Doctrine*

Alternatively, LDC argues that it is entitled to tolling under the continuing course of conduct doctrine. The Connecticut Supreme Court has applied the continuing course of conduct doctrine to toll the running of Section 52-577's three-year period. *See, e.g.*,

*Flannery*, 94 A.3d at 569-76; *Watts*, 22 A.3d at 1219-28. The doctrine "reflects the policy that, during an ongoing relationship, lawsuits are premature because specific tortious acts or omissions may be difficult to identify and may yet be remedied." *See Watts*, 22 A.3d at 1220 (quoting *Martinelli v. Fusi*, 963 A.2d 640 (Conn. 2009)). The supreme court has defined the requirements for application of the doctrine as follows:

> [T]his court has held that in order to support a finding of a continuing course of conduct that may toll the statute of limitations there must be evidence of the breach of a duty that remained in existence after commission of the original wrong related thereto. That duty must not have terminated prior to commencement of the period allowed for bringing an action for such a wrong. Where we have upheld a finding that a duty continued to exist after the cessation of the act or omission relied upon, there has been evidence of either a special relationship between the parties giving rise to a continuing duty or some later wrongful conduct of a defendant related to the prior act.

*See Flannery*, 94 A.3d at 570 (internal quotations omitted) (quoting *Watts*, 22 A.3d 1214); *accord Saint Bernard Sch. of Montville, Inc. v. Bank of America*, 95 A.3d 1063, 1077 (Conn. 2014).

LDC argues that this doctrine may apply here because it has alleged facts showing a special relationship with defendants. This Court has ruled that Syngenta may have owed plaintiffs in this MDL a legal duty relating to the commercialization of its products, in part because of the inter-connected nature of the relationships within this market. *See In re: Syngenta AG MIR 162 Corn Litig.*, 131 F. Supp. 3d 1177, 1188-93 (D. Kan. 2015) (Lungstrum, J.). The Connecticut Supreme Court has stated, however, that although the state's appellate courts "have not defined precisely what constitutes a special relationship for purposes of tolling," usually such a relationship "is one that is built upon a fiduciary or otherwise confidential foundation." *See Saint Bernard*, 95 A.3d at 1077. LDC has not

alleged such a fiduciary or confidential relationship---or even a business relationship of any kind---with Syngenta, and Connecticut courts have not indicated that the mere existence of any legal duty may be sufficient to satisfy this prong of having a special relationship. Accordingly, LDC may not rely on the existence of such a relationship to invoke the continuing course of conduct doctrine.

The Court turns then to the doctrine's alternative requirement of later wrongful conduct related to the original breach of duty. LDC argues that it has asserted claims based on defendants' commercialization of Viptera up to and after China's first rejections of corn containing MIR 162 in November and December 2013. A close examination of LDC's complaint, however, reveals an absence of any allegation regarding the commercialization of Viptera after October 2013. LDC cites paragraphs 80 and 81 of its first amended complaint, which refer to conduct "through 2013" and up to December 2013, but those allegations relate specifically to omissions by Syngenta, and no claims remain based on omissions. LDC also cites paragraphs 108 through 111, which relate to harm from the closing of the China market after the rejections, but those paragraphs relating to damages do not include allegations of *conduct* by defendants after October 2013. In fact, as shown in paragraphs 7 and 83, LDC complains only about defendants' commercialization of Viptera for purposes of the 2011, 2012, and 2013 growing seasons, which (as made clear in paragraph 62) would involve sales of seed ending before planting took place in the spring of those years. Thus, a reasonable reading of the entire complaint shows that LDC has *not* alleged continuing wrongful conduct involving Viptera after October 2013.

11

LDC's claims are also based, however, on defendants' allegedly wrongful commercialization of the Duracade product. LDC's direct allegations concerning Duracade are minimal---its enumeration of defendants' breaches in paragraph 114 includes the premature commercialization of Viptera *and* Duracade---but it has also incorporated the allegations made in the non-producer class action complaint filed in the MDL, which contains more detailed allegations of the wrongful commercialization of Duracade for the 2014 growing season. Such allegations, reasonably construed in LDC's favor, would include conduct through Spring 2014, which would bring LDC within the three-year limitations period.

Defendants argue that any such wrongful conduct involving Duracade was not related to any prior wrongful conduct involving Viptera because the two products were distinct, undergoing different approval processes in this country and in China. LDC has alleged, however, that its injuries arose from China's rejection of corn containing MIR 162, a trait also found in Duracade, and thus defendants are alleged in both cases to have negligently commercialized products containing that trait prior to Chinese approval. Moreover, LDC has alleged non-segregable injuries---the drop in the price of corn and the closure of the Chinese market---from the commercialization of both products, and the Connecticut Supreme Court has distinguished conduct causing such a cumulative injury from the case in which repeated events give rise to discrete injuries, which case would not fall within this tolling doctrine. *See Saint Bernard*, 95 A.3d at 1078-79 (quoting *Watts*, 22

A.3d 1214). Thus, LDC has alleged related conduct continuing after October 2013, which would allow the doctrine to apply in this case.[1]

LDC will be required eventually to produce evidence of a continuing course of conduct sufficient to support application of the tolling doctrine. At this stage, however, based solely on the pleadings, the Court concludes that the doctrine could apply to toll the running of the three-year period in Section 52-577 in this case. Thus, the Court cannot conclude that LDC's claims are untimely as a matter of law, and it therefore denies Syngenta's motion for judgment on the pleadings.

IT IS THEREFORE ORDERED BY THE COURT THAT defendants' motion for judgment on the pleadings (Doc. # 93 in Case No. 16-2788) is hereby **denied**.

IT IS SO ORDERED.

Dated this 30th day of October, 2018, in Kansas City, Kansas.

s/ John W. Lungstrum<br>
John W. Lungstrum<br>
United States District Judge

---

[1] In addition, even if the later conduct involving Duracade was not related to prior wrongful conduct involving Viptera, Syngenta would be entitled to judgment only to the extent LDC's claims are based on conduct occurring prior October 2013, and LDC's claims based on the commercialization of Duracade after that date would be timely and therefore would survive.